Evan S. Goldstein    (#011866)
**GOLDSTEIN WOODS & ALAGHA**
706 E. Bell Road, Suite 200
Phoenix, Arizona 85022
Telephone: (602) 569-8200
Fax: (602) 569-8201
egoldstein@gwalawfirm.com
meo@gwalawfirm.com

Steven J. Hulsman    (#010929)
**LEWIS ROCA ROTHGERBER CHRISTIE, LLP**
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595
Telephone: (602) 262-5311
Facsimile: (602) 262-5747
Email: shulsman@lewisroca.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Robert T. Poole and Kimberly R. Poole, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Federal Bureau of Investigation, a governmental entity; United States Department of Justice, a governmental entity; City of Tempe, an Arizona municipality; JOHN AND JANE DOES I-X; ABC PARTNERSHIPS I-X; BLACK CORPORATIONS 1-X,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiffs, by and through counsel undersigned, and for their claims against Defendants, and each of them, allege:

1

1. Plaintiff, Robert T. Poole, ("DPS Trooper Poole") is a married man and at all times mentioned herein, a resident and citizen of Maricopa County, Arizona.

2. Plaintiff, Kimberly R. Poole, is a married woman and at all times mentioned herein, a resident and citizen of Maricopa County, Arizona.

3. Defendant Federal Bureau of Investigation, ("FBI") is a governmental entity doing business in the State of Arizona.

4. Defendant FBI is part of the United States government as part of the Justice Department based upon 28 U.S.C. §531 and is the alter ego of the United States Department of Justice.

5. Defendant United States Department of Justice, ("DOJ"), is a federal executive department of the United States government tasked with the enforcement of federal law and administration of justice in the United States.

6. Defendant, City of Tempe, is an Arizona municipality.

7. This Court has jurisdiction pursuant to 28 U.S.C. §1402 because the amount in controversy exceeds $75,000, exclusive of costs and interest, and Plaintiffs are seeking damages on a tort claim against the United States under 28 U.S.C. §1346(b)(1). Plaintiffs and Defendant City of Tempe are citizens of Arizona. Defendants FBI and DOJ are governmental entities doing business in the State of Arizona.

8. Venue is proper before this Court pursuant to 28 U.S.C. §1391 and 28 U.S.C. §1357, in that the Defendants FBI and DOJ are agencies of the United States or officers thereof acting in their official capacity.

9. On information and belief, John Does 1-10, Jane Does 1-10, ABC Partnerships 1-10, and Black and White Corporations 1-10 are persons or entities that may have caused or contributed to Plaintiffs' injuries and damages. Plaintiffs requests

leave to amend this pleading when the identities and roles played by these persons or entities, if any, are discovered.

10. Whenever it is alleged in this Complaint that a Defendant did any act or thing, it is meant that such Defendant's officers, agents, servants, employees, or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization or ratification of such Defendant or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of such Defendant's officers, agents, servants, employees, or representatives. Defendants are liable for the actions of each of their officers, agents, servants, employees and representatives.

11. Plaintiffs are informed, believe and therefore allege that Defendants and each of them, jointly and in concert undertook to perform the acts as alleged herein, that Defendants and each of them had full knowledge of the acts of each co-Defendant as alleged herein, and that each Defendant authorized or subsequently ratified the acts of each co-Defendant as alleged herein, making each co-Defendant an agent of the other Defendants and making each Defendant jointly responsible and liable for the acts and omissions of each co-Defendant as alleged herein.

12. All events complained of herein occurred within Maricopa County, State of Arizona.

**General Allegations**

13. Plaintiffs incorporate paragraphs 1 through 12 as though fully set forth herein.

14. At all relevant times, Defendant, FBI, contracted, controlled, supervised and/or conducted a Basic Entry Level Rope Training Course in Tempe, Arizona.

3

15. At all relevant times, Defendant City of Tempe owned, leased, controlled and/or operated the Tempe/APS Joint Fire Training Center is located at 1340 East University Drive in Tempe, Arizona 85281.

16. DPS Trooper Poole was a Bomb Technician with the Arizona Department of Public Safety.

17. At the time of the incident, DPS Trooper Poole was assigned to a Level 5 Regional Safe Team in cooperation with the FBI.

18. As part of the Safe Team training, DPS Trooper Poole signed up to attend a basic ropes course conducted by the FBI ROCO team from Huntsville, Alabama.

19. The Basic Entry Level Rope Training Course was conducted at the Tempe/APS Joint Fire Training Center located at 1340 East University Drive in Tempe, Arizona 85281.

20. On or about December 12, 2022, the Basic Entry Level Rope Training Course was held at the Tempe/APS Joint Fire Training Center.

21. On December 12, 2022, the first day of the Basic Entry Level Rope Training Course, the class learned the basic knots for various rappelling, rescues, rigging and other usages.

22. Prior to their lunch break, on the first day, the instructor issued and instructed the class on various items, such as a harness, several carabiners, nylon webbing a Grigri, an ascender, leather gloves and some other essential items needed for the course.

23. After the lunch break, on the first day, the instructor advised the class to put on the gear and for each individual to check each other's gear for proper fit. The class then went outside to a four-story fire training tower, where there were various ropes laid out for demonstration purposes.

4

24. The remainder of the day, the class was instructed on the different uses for each tool and was taken to the fourth floor of the tower where there were four ropes, which appeared to be secured at the top of the tower and draped over the side of the building.

25. On December 13, 2022, the second day of class, the instructor reiterated the various knots from the previous day. The class was then instructed to put on their gear and head outside to the tower for briefing.

26. During the briefing there were three rope stations set up. Two were set up on the west side of the building and appeared to be coming from the fourth floor and down the face of the balconies. it. The third rope was down the flat side of the tower in front of several doors.

27. The class was then instructed to ascend the building by rope and climb through the open doors or climb over the balconies depending on which lane they were on; then use the stairs to come back down to the main level of the tower or descend by rope. The class was advised that an instructor would be in the building to direct them.

28. DPS Trooper Poole began his ascent, stopping at the first balcony and continuing to the second balcony. DPS Trooper Poole, was then instructed to descend by rope.

29. A statement authored by Agent, Adam Nixon of the FBI was prepared shortly after the loss and was provided to Defendant FBI in Plaintiff's Notice of Claim dated June 22, 2023. This statement is attached hereto as Exhibit A.

30. In that statement, Agent Nixon states that during the morning of day 1 students were taught the basic knots and issued climbing gear that would be used and given instructions for their use. During the afternoon, students were taught rappel techniques and cycled through three lanes doing rappels on munter hitch, Grigri, and a safeguard.

31. In that statement, Agent Nixon states that during the morning of day 2, the class did a review of the knots from day 1 and learned a few additional techniques in the classroom that would be utilized later that day. After this the class went to the tower and received a class on ascending ropes with the equipment issued to them. Three lanes were again set up for students to practice the techniques. On one lane (called lane 1 for ease of reference in this document) students were to ascend a rope and climb into a window on the third floor. On another (lane 2) they were to ascend to the top of a balcony and then rappel back down on a Grigri. On the final lane (lane 3) they were supposed to ascend up to that same balcony on the third floor and then walk back down the stairs to do the other lanes. An instructor or CSO (Climb Safety Officer) was assigned to supervise each station.

32. In that statement, Agent Nixon further describes that after receiving a demonstration of the techniques, students began to cycle through the stations.

33. Agent Nixon states that DPS Trooper Poole was the second person to do the ascension on lane 3.

34. The CSO for lane 3 was Adam Nixon.

35. Agent Nixon states that after reaching the top of the second-floor balcony (one below the exit point) it was apparent that DPS Trooper Poole was getting tired so he was told he could either finish the ascension as normal or he could rappel back down.

36. Agent Nixon further states that DPS Trooper Poole elected to come back down so he was told to unhook his ascender from the rope and rappel back down on his Grigri.

37. Agent Nixon further admits that he did not notice that DPS Trooper Poole unhooked his etrier (rope ladder) from his ascender instead of unhooking his ascender from the rope.

38. Agent Nixon further admits that when DPS Trooper Poole began his rappel on the Grigri, DPS Trooper Poole made another mistake that went unnoticed by CSO, Adam Nixon. Instead of braking on the rope as it exited the Grigri, DPS Trooper Poole used the redirect line that was still routed to a carabineer on his ascender.

39. Agent Nixon failed to notice this setup with the redirect meant that for every foot that DPS Trooper Poole descended, three feet of rope were actually being used. This resulted in the rope running out of DPS Trooper Poole's hand when he was still 3-4 feet off the ground and that this distance did not afford DPS Trooper Poole enough time to let go of the handle on the Grigri so he fell the rest of the distance to the ground even though he was still connected to the system.

40. Agent Nixon of the FBI was negligent and careless in supervising and instructing DPS Trooper Poole in his descent.

41. DPS Trooper Poole fell and landed on his back, knocking the wind out of him, and causing him to gasp for air.

42. As a direct and proximate result of Defendants' negligent and careless conduct, DPS Trooper Poole sustained injuries which required medical treatment.

43. As a further direct and proximate result of Defendants' negligent and careless conduct, DPS Trooper Poole has suffered pain, discomfort, anxiety, emotional trauma, loss of enjoyment of life, and permanent injuries, and will continue to suffer those losses in the future.

44. As a further direct and proximate result of Defendants' negligent and careless conduct, DPS Trooper Poole has incurred medical expenses and will incur additional medical bills in the future.

45. As a further direct and proximate result of Defendants' negligent and careless conduct, DPS Trooper Poole has incurred lost income and will incur additional lost income in the future.

46. On October 5, 2023, Paul R. Wellons, Associate General Counsel for the U.S. Department of Justice denied Plaintiff DPS Trooper Poole's Claim, pursuant to Title 28 C.F.R. § 14.9(a).

47. Plaintiffs have satisfied the prerequisites to suit by filing a Notice of Claim pursuant to Standard Form 95, Prescribed by DOJ, with Defendant FBI, which was denied by operation of law when not accepted within 60 days of submission.

48. Plaintiffs have satisfied the prerequisites to suit by filing a Notice of Claim pursuant to A.R.S. §12-821.01 with Defendant City of Tempe, which was denied by operation of law when not accepted within 60 days of submission.

49. Defendant FBI had a duty to take precautions for the safety of invitees and guests, including but not limited to inspecting and selecting the appropriate gear utilized during the classes, instructing, training, and supervising the persons taking the classes, and identifying, repairing and/or replacing dangers or defects, or adequately warn of the existence of such dangers or defects, and failed to do so in a reasonable fashion.

50. Defendant DOJ, on information and belief, had a duty to oversee the proper training of the FBI instructors utilized during this Basic Entry Level Rope Training Course, and failed to do so in a reasonable fashion.

51. Defendant City of Tempe, as a possessor of land, is required to use reasonable care to safeguard, remedy and warn of any unreasonably dangerous condition when it created the condition, or when it knew or should have known the condition existed, and on information and belief and failed to do so in a reasonable fashion.

52. Defendant City of Tempe, on information and belief, had a duty to take precautions for the safety of invitees and guests while at the Tempe/APS Joint Fire Training Center, including but not limited to inspecting and selecting the appropriate gear utilized during the classes, instructing, training, and supervising the persons taking

the classes, and identifying, repairing and/or replacing dangers or defects, or adequately warn of the existence of such dangers or defects, and failed to do so in a reasonable fashion.

53. Proper inspection, selection, instruction, training, supervision, maintenance, and warnings from the FBI, DOJ, and City of Tempe would have avoided or mitigated the dangerous conditions and the risk of serious injury such as sustained by DPS Trooper Poole.

**(CLAIM FOR RELIEF I)**

54. Defendant FBI owed a duty to DPS Trooper Poole to exercise reasonable care and supervision, as described above, during the Basic Entry Level Rope Training Course.

55. Defendant DOJ owed a duty to DPS Trooper Poole to oversee the proper training of the FBI instructors utilized during this Basic Entry Level Rope Training Course.

56. Defendant City of Tempe owed a duty to warn of or eliminate a potential risk of harm to DPS Trooper Poole.

57. Defendant Tempe/APS Joint Fire Training Center owed a non-delegable duty to DPS Trooper Poole to warn of or eliminate a potential risk of harm to DPS Trooper Poole.

58. Defendants' actions were negligent and negligent per se.

59. Defendants' negligence created an unreasonable but foreseeable risk of harm to DPS Trooper Poole.

60. Defendants' negligence was a cause of emotional distress and harm to Plaintiffs.

61. As a direct and proximate result of Defendants' negligent and careless conduct, DPS Trooper Poole sustained numerous injuries which have caused

considerable pain, suffering, disability, loss of enjoyment of life and anxiety. Upon information and belief, those injuries are permanent.

63. As a future direct and proximate result of the negligence of Defendants, DPS Trooper Poole suffered lost wages and future wage loss and impairment to his earning capacity as a result of the injuries he sustained all in an amount which is at the present time unascertainable. DPS Trooper Poole prays for leave to show what the reasonable value and total amount of those expenses are at the time of trial.

63. As further direct and proximate result of Defendants' negligent and careless conduct, Plaintiff Kimberly R. Poole has been deprived of the affection, companionship, comfort and care of her husband, DPS Trooper Poole, and DPS Trooper Poole has been deprived of the affection, companionship, comfort and care of his wife, Kimberly R. Poole.

64. Plaintiffs demand a jury trial pursuant to Rule 38, Fed.R.Civ.P.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiffs pray and demand judgment against Defendants and each of them as follows:

A. For such general and special damages as have been alleged above and which will be more specially set forth at the time of trial;

B. For medical expenses incurred, to date, by Plaintiff, DPS Trooper Poole and medical expenses to be incurred in the future;

C. For a reasonable and just sum determined by a jury as and for general damages, pain and suffering already incurred and reasonably likely to be incurred in the future by Plaintiff, DPS Trooper Poole;

D. For a reasonable value of Plaintiff Kimberly R. Poole's loss of consortium incurred as of the date of trial and to be incurred in the future.

1  E. For lost wages incurred to date by Plaintiff, DPS Trooper Poole and lost
2  wages to be incurred in the future.
3  F. For Plaintiffs' costs incurred herein; and
4  G. For such other relief as the Court deems just and proper.

6  Dated this 10th day of January, 2024.

**GOLDSTEIN WOODS & ALAGHA**

By: */s/Evan S. Goldstein*
Evan S. Goldstein
706 E. Bell Road, Suite 200
Phoenix, Arizona 85022
*Attorneys for Plaintiffs*

**LEWIS ROCA ROTHGERBER CHRISTIE, LLP**

By: */s/Steven J. Julsman*
Steven J. Hulsman
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595
*Attorneys for Plaintiffs*

ORIGINAL of the foregoing filed
This 10th day of January, 2024, with
The Clerk of

By:   /s/ Diane Arroyo
Poole/pldg/4137-1